(January 19, 1989)

■ In the Matter of JASON M., Alleged to be a Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner; TRACY M., Appellant, et al., Respondent. (And Another Related Proceeding.)—Weiss, J. Appeal from an order of the Family Court of Otsego County (Kepner, Jr., J.), entered August 12, 1985, which, *inter alia,* (1) granted the application of the Otsego County Department of Social Services, in a proceeding pursuant to Family Court Act article 10, to adjudicate Jason M. to be a neglected child, and (2) granted the application of James M., in a proceeding pursuant to Family Court Act article 6, for custody of Jason M.

This matter has its genesis in a child abuse petition filed in May 1983 by the Otsego County Department of Social Services (hereinafter Department), based on an incident in which the

child, then age four, was struck in the face by Raymond N., who was the live-in paramour of Tracy M., the child's mother. After a preliminary hearing on June 2, 1983, Family Court placed the child in the Department's custody (see, Family Ct Act § 1027). On July 7, 1983, the petition was amended, by consent, to reflect allegations of neglect, instead of abuse, and both the mother and her paramour admitted that they failed to provide adequate medical care for the child. The dispositional stage ensued, with the child continuing in the Department's custody. Notably, three separate custody petitions were filed on behalf of the child's mother, father and maternal grandmother. Eventually, the court conducted a combined custody/dispositional hearing which extended over four days, concluding November 2, 1984. Family Court granted custody to the father pursuant to a gradual schedule for a complete transfer of physical custody. The court continued visitation for both the mother and grandmother. The mother has appealed.

The mother's assertion that Family Court failed to initially apprise her of a right to counsel and then improperly accepted her admission of neglect is entirely unfounded. The record confirms that the mother, at the initial appearance, indicated she would be represented by Charles Bosco. At the July 7, 1983 admission appearance, Bosco did in fact appear and partake in the proceeding on her behalf. There is little doubt that the mother knowingly admitted the allegations of neglect, with counsel's approval. In the process, she secured a favorable reduction in the charge against her.

The mother's further contention that Family Court erred in awarding custody to the father is also unavailing. The controlling factor here, of course, is the best interest of the child. Moreover, at a dispositional hearing, the court is required to assess the present capacity of the relevant parties to properly attend the child's needs (see, Matter of Faith AA., 139 AD2d 22, 25). Because of her continuing relationship with her paramour, Family Court determined that the mother would not prove a proper custodian for the child. In so deciding, the court emphasized that the paramour admitted slapping the child and remained "an individual who is both volatile and violent". Incredibly, the paramour acknowledged that he planned to have the father killed during the year prior to the dispositional hearing. The court astutely observed that the child, who is legally blind and has a hearing problem, should not be exposed to this type of individual. With respect to the father, Family Court recognized that he is not a model parent but observed that he had taken positive steps to foster a

relationship with his son since this proceeding ensued. The court's assessment of the father as a fit parent finds substantial basis in the record. Moreover, given the special needs of the child, Family Court properly directed a gradual phase-in period for the father to assume physical custody of his son. In sum, we find the custody award well within the court's discretion (see, Family Ct Act § 1052 [a] [ii]; § 1054).

Order affirmed, without costs. Mahoney, P. J., Kane, Weiss, Mercure and Harvey, JJ., concur.